United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **CARRIE MURPHY**, <br>         Plaintiff, <br><br>     v. <br><br> **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY**, <br>         Defendant. | Case No.  14-cv-03784-YGR <br><br> **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 29, 33 |

Plaintiff Carrie Murphy filed this action seeking judicial review of Social Security Administration Administrative Law Judge ("ALJ") John Heyer's decision finding that she was not disabled under sections 216(i) and 223(d) of the Social Security Act (the "Act"). Pending before the Court are the parties' cross motions for summary judgment. (Dkt. Nos. 29, 33.) Plaintiff argues the ALJ erred by: (1) failing to provide clear and convincing reasons to discredit plaintiff's testimony in part; (2) failing to provide clear and convincing reasons to discount the opinions of plaintiff's treating medical sources; (4) according great weight to the opinion of a reviewing physician; (4) failing to discuss the lay witness statement of plaintiff's mother; and (5) finding plaintiff could perform the full range of unskilled light occupations.

Based thereon, plaintiff argues that remand for an award of benefits is proper. Having carefully considered the papers submitted and the entire record in this case, and for the reasons set forth below, plaintiff's motion for summary judgment and the Commissioner's cross motion are both **GRANTED IN PART**. As set forth herein, the Court grants plaintiff's motion with respect to all but one treating source and remands to the ALJ for further proceedings consistent herewith.

United States District Court
Northern District of California

## I. BACKGROUND

On January 31, 2011, plaintiff filed an application for social security disability insurance benefits pursuant to Title II of the Act, alleging that she became disabled on March 16, 2010 and was thereby denied full benefits. (Record at 16.) She later amended her disability onset date to October 14, 2010. (*Id.* at 212.) Plaintiff based her disability claim primarily on histories of depression with bipolar disorder, as well as side-effects following her kidney transplant. (*See id.* at 18.) Plaintiff also alleged obesity, history of polysubstance abuse (including alcohol, methamphetamines, heroin, and computer cleaner or "dust off"), hypertension, diabetes mellitus, carpel tunnel syndrome in her left arm, heel pain caused by mild calcaneal spurring, and lingering neck and shoulder pain from a July 2009 motor vehicle accident. (*See id.* at 18-19; 340; 478.)

The Social Security Administration denied plaintiff's application initially and on reconsideration. (*Id.* at 16.) On December 12, 2012, the ALJ held a hearing and, on January 9, 2013, issued his final decision finding that plaintiff is not disabled within the meaning of the Act.[1] (*Id.* at 14-16.) Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review, rendering the ALJ's decision final. (*Id.* at 2-5.) Plaintiff then filed the instant action, which became ripe for decision on July 17, 2015. (*See* Dkt. No. 34.)

## II. LEGAL STANDARDS

This Court has jurisdiction under 42 U.S.C. section 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ.

---

[1] The ALJ ultimately determined that plaintiff has not been disabled within the meaning of the Act since March 16, 2010. (*See* Record at 25.) This is the disability onset date that plaintiff originally provided in her application. (*See id.* at 212.) Plaintiff later amended her disability onset date to October 14, 2010. (*See id.*) The ALJ offers no explanation as to why he did not use the amended disability onset date.

*Burch,* 400 F.3d at 679.

The Act uses a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person is involved in substantial work activity if she engages in work that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, she is not disabled. If the claimant does have a severe impairment or combination of impairments, then the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step.

Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545.

At Step Four, the ALJ must determine whether the claimant has the RFC to perform past

United States District Court
Northern District of California

3

1 relevant work.  20 C.F.R. § 404.1520(f).  If the claimant has the RFC to perform past relevant

2 work, she is not disabled.  If the claimant is unable to do past relevant work or has no past relevant

3 work, the ALJ proceeds to the final step in the sequential evaluation.

4   At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience

5 in determining whether the claimant can perform any other work besides past relevant work.  20

6 C.F.R. § 404.1520(g).  "Substantial work activity is work activity that involves doing significant

7 physical or mental activities . . . . [W]ork may be substantial even if it is done on a part-time basis

8 or if you do less, get paid less, or have less responsibility than when you worked before."  20

9 C.F.R. §§ 404.1572(a), 416.972(a).  If the claimant can perform other work, she is not disabled.  If

10 the claimant cannot perform other work and fulfills the duration requirement, she is disabled.

### III. THE ALJ'S DECISION

12   In a ten-page decision, the ALJ applied the five-step sequential analysis described above to

13 determine plaintiff was not eligible for disability insurance benefits.  The ALJ concluded that

14 plaintiff was not disabled under sections 216(i) and 223(d) of the Act during the relevant time

15 period.  A summary of his decision follows below.

16   At Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity

17 since March 16, 2010 and meets the insured status requirements of the Act through December 31,

18 2015.  (Record at 18.)

19   At Step Two, the ALJ determined that plaintiff "has the following severe impairments:

20 bipolar disorder, history of kidney transplant, obesity, and history of polysubstance abuse."  (*Id*.)

21 The ALJ further found plaintiff to suffer from other, nonsevere impairments, including:

22 hypertension, diabetes, carpel tunnel syndrome, heel pain from calcaneal spurring, and neck and

23 shoulder pain from a past car accident.  (*Id*. at 18-19.)  In making this determination, the ALJ gave

24 "great weight" to the opinion of a state agency consultant and treating source Dr. John Valdin,

25 M.D. as to the nonsevere impairments. Specifically, he gave them great weight because he found

26 their assessments consistent with one another and with the record.  (*Id*. at 19.)

27   At Step Three, the ALJ determined that plaintiff does not have an impairment or

28 combination of impairments that meets or medically equals the severity of the criteria of listings

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   12.04 and 12.09.  (*Id.*)  To arrive at this conclusion, the ALJ considered whether plaintiff's mental

2   impairments resulted in at least two of the following: (i) marked restriction in the activities of

3   daily living; (ii) marked difficulties in maintaining social functioning; (iii) marked difficulties in

4   maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each

5   of extended duration.  (*Id.* at 19.)  The ALJ found that plaintiff "has mild limitation in the

6   activities of daily living and social functioning, moderate limitations in concentration, persistence

7   or pace," but "has experienced no episodes of decompensation…of extended duration."  (*Id.*)  The

8   ALJ further found that her "mental impairments do not cause at least two "marked" limitations or

9   one "marked" limitation and "repeated" episodes of decompensation."  (*Id.*)

10          Before reaching Step Four, the ALJ determined plaintiff's RFC.  Plaintiff's RFC consists

11   of her ability to engage in physical and mental work activity on an ongoing basis, despite any

12   limitations from her impairments.  The ALJ ultimately determined that plaintiff retained the

13   capacity to perform light work.  (*See id.* at 20.)  With respect to plaintiff's physical impairments

14   related to her kidney transplant, the ALJ first accorded "limited weight" to the opinions of Nurse

15   Practitioner Christian Visci, FNP and Dr. Kerri Ashling, M.D. – that plaintiff had tremors from

16   her anti-kidney rejection medication, uncontrolled bipolar disorder, and a generally reduced

17   capacity to work – because their opinions were "inconsistent with the objective evidence of record

18   and with the claimant's lack of treatment for active symptoms."  (*Id.* at 22.)  The ALJ also gave

19   one of the state agency reviewers' assessments of the limitations Plaintiff faced as a result of her

20   kidney transplant "little weight" because the ALJ found the claimant's obesity and renal problems

21   do not impose limitations to the degree alleged.  (*Id.*).  With respect to plaintiff's kidney function,

22   the ALJ gave "great weight" to Dr. Valdin's March 2012 opinion that plaintiff kidney is

23   functioning well because it was consistent with the record. (*Id.*)

24          With respect to plaintiff's mental impairments, the ALJ gave "little" or "limited" weight to

25   all six treating medical source opinions.  Although Dr. Michael Levy, M.D. opined that plaintiff

26   cannot work eight hours in a day, would miss work more than five times a month, and has marked

27   functional limitations in all realms, the ALJ reasoned that Dr. Levy's opinion was entitled to "little

28   weight" because "the record shows that while claimant continues to suffer from some degree of

United States District Court
Northern District of California

depression, her symptoms are not as limiting as alleged.  Since the alleged onset date, her symptoms have improved and her mental state has been generally stable." (*Id.* at 23.)  The ALJ likewise discounted the opinion of therapist Gary Schwager, M.F.T., that plaintiff would have difficulty holding down a job as a result of her ailments, for the same reasons he provided for Dr. Levy.  (*Id.*)  The ALJ also gave "limited weight" to the October 2012 opinions of Nurse Practitioner Visci and Dr. Ashling, and to the November 2012 opinions of Dr. Helena Chan, M.D. and Dr. Flora Chan, Psy. D. – that, due to her depression, claimant would have difficulty working a competitive job, completing tasks, getting to work, and sustaining a forty hour work week.  (*Id.*)  The ALJ held that these opinions "are inconsistent with the progress notes of these treaters, with the claimant's GAF score of 55, and with the record as a whole.  Further, they seem to rely heavily on the claimant's subjective reporting without corroborating signs on exams." (*Id.*)

The ALJ provided additional reasons for his determination that plaintiff retained the RFC to perform light work despite the opinions of plaintiff's medical sources.  First, he recounted, in detail, plaintiff's treatment history and status from February 2009 to October 2012, which generally evidenced improvement in plaintiff's condition.  (*Id.* at 22-23.)  Second, the ALJ gave only some weight to the written testimony of plaintiff's friend, Jasmine Torres, because, "the record does not corroborate much of her report.  For example, [contrary to testimony of Ms. Torres], nowhere in the record did the claimant report that she falls." (*Id.* at 23-24.)  By contrast, the ALJ gave greater weight to the opinion of the state agency consultant Dr. Beverly Morgan, M.D., that plaintiff could perform simple, repetitive tasks because the ALJ found "[h]is assessment is consistent with the treatment record, the claimant's breadth of activity and her presentation at the hearing and the undersigned affords it the most probative weight." (*Id.*; *see also* Record at 83.) (internal citation omitted.)

Having made the RFC determination, the ALJ proceeded to Step Four to determine that plaintiff ultimately did not have the RFC to perform her past relevant work.  (*Id*. at 24)  In making this determination, the ALJ credited the testimony of the vocational expert, who testified that plaintiff can no longer perform her previous skilled, full-time job.  (*Id.*)

At Step Five, the ALJ concluded that plaintiff was not under a disability, as it is defined in

1  the Act, from March 16, 2010, through the date of his decision.  (*See id*. at 25-26.)

2  **IV.**  **DISCUSSION**

3      Plaintiff argues the ALJ erred by: (A) failing to provide clear and convincing reasons for

4  only partially crediting plaintiff's testimony; (B) failing to provide clear and convincing reasons

5  for discounting the opinions of plaintiff's treating medical sources; (C) according the most weight

6  to the opinion of a reviewing physician; (D) failing to discuss the lay witness statement of her

7  mother; and (E) finding plaintiff could perform the full range of unskilled light occupations.

8  Based thereon, plaintiff argues that remand for an award of benefits is proper.

9      In opposition, the Commissioner argues that the ALJ properly evaluated plaintiff's

10  credibility, properly weighed the opinion evidence provided by the treating and reviewing medical

11  sources, did not err in failing to address lay witness testimony, and properly relied on vocational

12  expert testimony to determine plaintiff's RFC.  The Commissioner maintains that should the Court

13  find the ALJ erred, remand for further administrative proceedings, rather than an award of

14  benefits, is proper.  The Court considers each of these five arguments in turn.

15      **A.**  **Credibility of Plaintiff's Testimony**

16      Plaintiff testified at the hearing that she felt she was unable to work because of her

17  "depression and the symptoms that come with it." (*Id.* at 47.)  The ALJ found plaintiff only

18  partially credible, noting that plaintiff's "medically determinable impairments could reasonably be

19  expected to cause the alleged symptoms; however, [her] statements concerning the intensity,

20  persistence and limiting effects of these symptoms are not entirely credible for the reasons

21  explained in this decision." (*Id.* at 21.)  Plaintiff argues that the reasons provided by the ALJ for

22  partially discrediting her testimony were not clear and convincing.  Upon review of the record and

23  the ALJ's decision, and for the reasons set forth below, the Court finds that the ALJ's

24  determination that plaintiff was only partially credible was sufficiently supported by record as set

25  out in the specific, clear, and convincing reasons he provided.[2]

26

27      [2] The Commissioner argues that the ALJ did not need to provide clear and convincing reasons to discount plaintiff's testimony.  The Court does not reach this argument because it finds that the ALJ provided sufficiently clear and convincing reasons for discounting plaintiff's testimony, affirming this aspect of the ALJ's decision under a less stringent standard than that

28

United States District Court
Northern District of California

### 1. Legal Standard

To assess a claimant's subjective testimony, an ALJ must engage in a two-step inquiry. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)).  First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom."  *Id.*  Second, if the claimant provides the evidence required by step one, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so."  *Id.* (citing *Smolen*, 80 F.3d at 1283–84).  "The clear and convincing standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted).

An ALJ "may find the claimant's allegations of severity to be not credible," but the ALJ "must specifically make findings which support this conclusion."  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284.  "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony...."  *Bunnell*, 947 F.2d at 345 (internal quotation marks and citation omitted).  The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).  But "[i]f the ALJ's credibility finding is supported by substantial evidence in the record," the reviewing court "may not engage in second-guessing."  *Id.* at 959.

\\\

proposed by the Commissioner.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (holding that an ALJ must provide clear and convincing reasons to discount a claimant's subjective testimony when there is no affirmative evidence of malingering).

### 2.    The ALJ's Credibility Analysis

Plaintiff argues that the ALJ did not provide clear and convincing reasons for partially discrediting her testimony, constituting reversible error.  The ALJ properly engaged in the two-step inquiry prescribed by *Tommasetti* for credibility determinations on subjective testimony, though he did not refer to it as the *Tomasetti* inquiry.  *See* 533 F.3d at 1039.  (Record at 20.)  At the first step, the ALJ explained plaintiff's self-reported ailments, her capabilities, and the activities in which she regularly engaged, and ultimately agreed that plaintiff's medically-determinable impairments could reasonably be expected to cause her alleged symptoms.  (*Id.* at 20-21.)  The parties do not dispute whether the ALJ's analysis at step one was sufficient.

With respect to the second step, however, the parties dispute the sufficiency of the ALJ's determination that plaintiff's impairments were not as limiting as she alleged.  The ALJ began by summarizing plaintiff's medical treatment history from February 2009 to October 2012.  This summary indicated that plaintiff's conditions were both improving over time and made manageable by her medication.  (*See* Record at 21-24.)  Specifically, he reasoned:

> Despite allegations of disabling symptoms, the claimant engages in a breadth of daily activity. The claimant attends to her personal care without limitation, does chores and laundry, uses public transportation, shops in stores, manages her finances but has some issues with tracking them, reads, watches television, and attends social events such as birthday parties (Ex. 4E).  During a field office interview in February 2011, the claimant was pleasant, well groomed and well prepared. She had no observed limitations in understanding, concentrating, answering, sitting, standing or walking (Exs. 1E; 4E).  The evidence shows that she has remained physically and mentally stable since the alleged onset date.  Recent mental health progress notes also show that the claimant has cancelled several sessions, indicating that her symptoms are not as severe as alleged (Ex. 15F).  The claimant was able to understand and fully respond to all questions posed of her at the hearing, she actively cares for her mother, and she testified that she is seeking employment.

(*Id.* at 24.)  The Court finds that these reasons both specifically state the symptom testimony that the ALJ did not find credible and point to the facts in the record the ALJ relied on in reaching his conclusion.  *See Smolen*, 80 F.3d at 1284.

Moreover, the Court finds that the ALJ's decision is based on substantial evidence in the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    record.  Although it is clear from the record that plaintiff has significant health issues, the ALJ's

2    inference that plaintiff's medical records are inconsistent with the alleged extent of her incapacity

3    is nonetheless supported by substantial evidence.  First, her physical condition appears to be

4    stable.  Plaintiff underwent a kidney transplant in 2009, but her "physical condition has been

5    stable on medication and…her kidney is functioning well, despite limited follow up care."

6    (Record at 22; *see also id.* at 680 (noting kidney function is normal).)  Plaintiff's mental health

7    appears to be less stable than her physical health: she is consistently diagnosed as bipolar and

8    generally depressed throughout the record.  (*See, e.g. id.* at 683 ("Current problems or complaints:

9    depression and substance abuse."); *id.* at 451 (noting plaintiff suffers from Bipolar II).)  However,

10   the record as a whole reasonably suggests that the debilitating effects of plaintiff's depression

11   would not prevent her from ever working again.  For example, in March of 2010, plaintiff missed

12   a group therapy session to attend a birthday party.  (*See id.* at 432.)  And treatment notes from

13   another March 2010 mental health appointment indicate that plaintiff was not regularly attending

14   therapy.  (*See id.* at 442-43.)  Treatment notes from a September 2011 appointment indicate that

15   her mental status was normal and her mood was less depressed than in the past because of

16   medications she was taking at that time.  (*See id.* at 464.)  The narrative summary from another

17   September 2011 visit includes the notation "[m]ood continues to be better- sleeping well, though

18   still eating too much…."  (*Id.* at 467.)  At a November 2012 mental health appointment, plaintiff

19   stated that she was feeling "ok, not great but not bad." (*Id.* at 519 (internal quotation marks

20   omitted).)   Thus, while there is no dispute that plaintiff suffers from depression, the record

21   supports the ALJ's determination that her symptoms are not as debilitating as she suggests.

22              **3.   Plaintiff's Arguments on Appeal**

23          In support of her motion, plaintiff argues that the ALJ relied on four insufficient reasons to

24   support of his credibility determination.  The Court addresses each of these arguments in turn.

25          First, plaintiff contends that cancellation of several mental health sessions cannot

26   constitute a clear and convincing reason to discredit her testimony.  The Court is not persuaded.

27   The ALJ may consider the failure to seek or follow prescribed treatment in making his credibility

28   determination on plaintiff's subjective symptom testimony.  *See, e.g. Burch*, 400 F.3d at 681

1   ("The ALJ is permitted to consider lack of treatment in his credibility determination.").  Plaintiff's

2   argument on this point is primarily that cancellation of several mental health sessions actually

3   supports her subjective testimony.  In other words, she cancelled or rescheduled at least one

4   session because she was feeling too depressed to get out of bed.  The portion of the record cited by

5   plaintiff in support of this argument, however, shows she only cancelled one session for this

6   reason.  (*See* Record at 518.)  There is no explanation provided for another session that she

7   cancelled.  (*See id*. at 516.)  Further, other parts of the record reflect that plaintiff missed a

8   treatment session to attend a birthday party (*see id.* at 432), and had a phone exchange with a

9   therapist where the therapist only agrees to continue to excuse her from work if she begins

10  attending group therapy, suggesting that she missed multiple sessions.  (*See id.* at 442-43.)  While

11  plaintiff's argument has intuitive appeal, one could also reasonably conclude that the record as a

12  whole shows otherwise.  Thus, the ALJ did not err in considering the fact that plaintiff cancelled

13  one or more mental health sessions.

14       Second, plaintiff argues that her breadth of daily activities neither equates with their

15  performance on a regular, daily basis, nor does it demonstrate an ability to perform substantial

16  gainful activity.  The ALJ may consider a claimant's daily activities that "may be seen as

17  inconsistent with the presence of a condition which would preclude all work activity." *Curry v.*

18  *Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where

19  claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop

20  for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding

21  ALJ's decision to deny benefits based, in part, on the determination that claimant performed daily

22  activities transferable to a work setting).  The ability to care for others may properly serve as the

23  basis for an adverse credibility finding as to the allegedly debilitating effect of a claimant's

24  symptoms.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (upholding ALJ's adverse

25  credibility determination of a claimant's testimony in part because she was able to care for her two

26  young children).

27       Here, the ALJ determined that plaintiff's daily activities and her ability to care for her

28  mother undermined her claim that she suffered from totally debilitating symptoms.  As in *Curry*,

11

United States District Court
Northern District of California

1    plaintiff testified that she engages in a moderate breadth of daily activities, suggesting some

2    remaining capacity to work.  *See Curry*, 925 F.2d at 1130.  Plaintiff devotes much of her argument

3    on this point to the contention that her daily activities do not equate to her ability to meet the

4    demands of a full time job.  Plaintiff's argument is misplaced.  The ALJ found that plaintiff's RFC

5    only gave her the ability to perform light, part time work – not a full time job.  (*See* Record at 20.)

6    The ALJ may consider plaintiff's daily activities and her ability to care for her mother in making

7    his adverse credibility determination.   (*See, e.g.* Record at 24.)  The Court finds the ALJ's

8    analysis of plaintiff's daily activities in the record was clear and convincing, and constitutes an

9    appropriate basis on which he may support his credibility determination.

10        Third, plaintiff contends that the fact that she was seeking part time work should not be

11    held against her.  Plaintiff primarily relies on *Garrison v. Colvin* and *Kornock v. Harris* for the

12    proposition that she should not be penalized for attempting to live a normal life, which includes

13    looking for part time work.  *See Garrison*, 759 F.3d at 1016 ("disability claimants must not be

14    penalized for attempting to lead normal lives…"); *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir.

15    1980) ("The ability to work only a few hours a day or to work only on an intermittent basis is not

16    the ability to engage in 'substantial gainful activity'").  Again, plaintiff's reliance on these cases is

17    misplaced.  Both of these cases address evidence of a claimant seeking work in the context of an

18    ALJ's improper inference that the claimant's daily activity level affected an RFC determination.

19    In neither case was the Ninth Circuit discussing whether an ALJ may consider the fact that a

20    claimant was seeking part time work in making a credibility determination.  In that regard, the

21    Commissioner's unpublished authority holding that an ALJ may consider the fact that a claimant

22    is looking for part time work in making a credibility determination is more persuasive.  *See, e.g.*

23    *Merritt v.* Colvin, 572 Fed. Appx. 468, 470-71 (9th Cir. 2014) (concluding that claimant's interest

24    in starting a new job was a clear and convincing reason in support of an ALJ's adverse credibility

25    determination regarding the claimant's subjective testimony).  Therefore, it was not improper for

26    the ALJ to consider the fact that plaintiff sought part time employment in making his credibility

27    determination that her symptoms were not as severe as alleged.  Plaintiff's search for part time

28    work is a clear and convincing reason in support of the ALJ's adverse credibility determination.

United States District Court
Northern District of California

1      Fourth, plaintiff argues that her appearance at the hearing, where she was alert and able to

2  respond to all the questions the ALJ asked her, does not contradict her testimony about the

3  limiting impact of her symptoms.  Plaintiff makes a similar argument regarding the ALJ's reliance

4  on her appearance at an earlier Social Security Administration field office interview.  This

5  particular argument does persuade.  The hearing lasted from 9:34 a.m. to 10:04 a.m. (*id.* at 45, 63),

6  but the record does not indicate the duration of the field office interview (*id.* at 153-155).

7  Appearing alert for a thirty minute hearing does not logically equate to the ability to work even a

8  part time job.  The Court agrees with plaintiff that her appearance at the hearing cannot constitute

9  a clear and convincing reason to support an adverse credibility determination.  Even where the

10  ALJ erred in part on a credibility determination, providing other valid reasons for his decision

11  supports upholding his overall credibility finding.  *See Molina*, 674 F.3d at 1115 ("error is

12  harmless so long as there remains substantial evidence supporting the ALJ's decision and the error

13  does not negate the validity of the ALJ's ultimate conclusion") (internal quotations omitted).  The

14  Court finds this error harmless in light of the other clear and convincing reasons provided by the

15  ALJ and supported by substantial evidence in the record.

16      Finally, plaintiff argues that the ALJ did not fulfill his duty to develop the record fully and

17  fairly by asking plaintiff about her contradictory statements at her hearing.  While such a duty

18  exists, the Court does not agree that the ALJ failed to perform his duty in this instance.  *See*

19  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (explaining the ALJ has a duty to

20  develop the record fully and fairly even when claimant is represented by counsel).  The transcript

21  of the hearing reflects that the ALJ asked plaintiff about apparent contradictions he saw between

22  the record and her testimony.  (*See* Record at 50-54.)  Specifically, the ALJ: (i) asked her

23  questions about how her symptoms are as limiting as alleged considering her ability to care for her

24  mother, (ii) questioned her concerning specific treatment notes showing her physical and mental

25  conditions have improved, (iii) inquired about the fact she has applied for jobs and expressed

26  interest in going back to school, and (iv) also probed into her daily activities.  (*See id.*)  The ALJ's

27  questioning at the hearing and the reasons provided in his written decision show that the ALJ

28  carried out his duty to develop the record fully and fairly.  *See Tonapetyan*, 242 F.3d at 1150-51

(finding that the ALJ did not fully develop the record by simply relying on a physician's opinion). Accordingly, the Court declines to disturb the ALJ's adverse credibility finding on this basis as well.

For these reasons, the ALJ's determination that plaintiff lacked credibility was sufficiently supported by the clear and convincing reasons he provided. Any inferences that the ALJ drew against plaintiff were reasonably drawn from the record, which he frequently and accurately cited. The Commissioner's motion on this ground is **GRANTED**.

### B.    Discounting the Opinions of Treating Medical Sources

Next, plaintiff argues that the ALJ's decision should be vacated because he improperly gave "little" or "limited" weight to the opinions of plaintiff's treating medical providers without providing the requisite clear and convincing reasons. Specifically, the ALJ assigned only little or limited weight to the opinions of all six of plaintiff's treating medical sources opining on her mental ailments and symptoms.[3]  The Court largely agrees. The ALJ failed to "do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). He did not set out the required "detailed and thorough summary of the facts and conflicting clinical evidence, [along with] stating his interpretation thereof, and making findings." *Id.*

For the reasons discussed below, the Court **GRANTS** plaintiff's motion on this ground with respect to physicians Dr. Levy, Dr. Helena Chan, Dr. Flora Chan, Dr. Ashling, and Nurse Practitioner Visci, and **GRANTS** the Commissioner's motion with respect to Mr. Schwager.

### 1.    Legal Standard

In determining whether a claimant is disabled within the meaning of the Act, the ALJ must consider all medical opinion evidence. *Tomasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). Medical opinions are arranged in a hierarchy of three groups, namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining physicians, with the

---

[3] In fact, of all of the medical sources involved in plaintiff's treatment, the ALJ explicitly gave only the opinion of Dr. Valdin "great weight," and only as regards plaintiff's physical ailments. (Record at 22 (citing record at 488-89).)  Dr. Valdin opined only on plaintiff's physical impairments related to her kidney transplant, concluding that she did not face significant limitations, but also noting he did not treat her mental impairments. (*Id.* at 488-89.)

United States District Court
Northern District of California

1  opinions of treating physicians generally accorded the most weight.  *See Valentine v. Comm'r of*

2  *Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (noting that there are three types of medical

3  opinions in social security cases); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222

4  (9th Cir. 2010) (explaining that opinions of treating physicians are entitled to more weight than

5  opinions of examining physicians).  The rationale for giving greater weight to a treating

6  physician's opinion is that he or she is employed to cure and has a greater opportunity to know and

7  observe the patient as an individual.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987)

8  (citations omitted).  All of the physicians whose opinions the ALJ rejected in this case were

9  treating physicians.  The ALJ may only reject[4] the uncontroverted (as opposed to contradicted)

10  opinion of a treating physician by providing "clear and convincing" reasons supported by

11  substantial evidence in the record.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th

12  Cir. 2008).  "The ALJ can meet [the clear and convincing reasons] burden by setting out a detailed

13  and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

14  thereof, and making findings."  *Embrey*, 849 F.2d at 421 (quoting *Cotton v. Bowen*, 799 F.2d

15  1403, 1408 (9th Cir. 1986)).  "However, an ALJ need not give controlling weight to the opinion of

16  a treating physician.  Although a treating physician's opinion is generally afforded the greatest

17  weight in disability cases, it is not binding on an ALJ with respect to the existence of an

18  impairment or the ultimate determination of disability.  The ALJ may disregard the treating

19  physician's opinion whether or not that opinion is contradicted."  *Batson v. Comm'r of Soc. Sec.*,

20  359 F.3d 1190, 1194-95 (9th Cir. 2004) (internal citations and quotations omitted).

21        Here, the six treating medical source opinions that the ALJ discounted were

22  uncontroverted, as they all agreed that plaintiff would not be able to perform the responsibilities

23

24        [4] The Court recognizes that the ALJ never explicitly "rejects" the opinions of the treating
25  physicians, but rather accords them "little weight" or "limited weight," thereby significantly
      discounting their opinions.  This is a distinction without a difference in our case law. The terms
26  "reject" on the one hand and "discount" on the other are used interchangeably by the Ninth Circuit
      in evaluating instances where an ALJ gives less than full credit to the opinion testimony of
27  treating medical sources.  *See, e.g., Tomasetti*, 533 F.3d at 1040-41.  As such, the Court makes no
      distinction herein between rejecting and discounting opinion testimony of treating medical
28  sources.

1    required by a competitive job consistently in the future.  Of the medical providers whose opinions

2    the ALJ rejected, four are physicians.[5]  Mr. Schwager is a family therapist and Ms. Visci is a nurse

3    practitioner.  (*See* Record at 455, 503.)  Different standards apply to judicial review of the reasons

4    the ALJ gave for the weight he accorded to the opinions of providers of medical services who are

5    not physicians.[6]  "Nurse practitioners and therapists are considered 'other sources.'  While their

6    opinions must still be evaluated, the ALJ may discount testimony from these 'other sources' if the

7    ALJ gives reasons germane to each witness for doing so." *Ghanim v. Colvin*, 763 F.3d 1154, 1161

8    (9th Cir. 2014) (citing 20 C.F.R. § 404.1513(d); 20 C.F.R. § 404.1527(c); *Molina*, 674 F.3d at

9    1111) (some internal quotations omitted).  Thus, the opinion of Mr. Schwager will be evaluated

10   under the "other sources" rubric.  By contrast, because Ms. Visci was a co-signatory on a medical

11   opinion questionnaire co-signed by Dr. Ashling (*see* Record at 502-04), the ALJ appropriately

12   treated the opinion of Ms. Visci in the same manner as that of three other physicians (*id*. at 23).[7]

The Court considers the sufficiency of the reasons the ALJ provided to discount the

opinions of each of the treating source opinions below.

### 2.    Psychiatrist Dr. Levy and Therapist Mr. Schwager

With respect to Dr. Levy, plaintiff argues that the ALJ's decision should be overturned

because he improperly gave little weight to the opinion of her former psychiatrist.  The ALJ gave

little weight to Dr. Levy's opinion that plaintiff cannot work eight hours in a day, would miss

more than five days of work per month, has marked functional limitations in all areas, and would

have difficulty maintaining a job.  (Record at 23 (referring to Record at 458-63).)  The ALJ's

---

[5] The treating physicians are Dr. Levy, Dr. Helena Chan, Dr. Flora Chan, and Dr. Ashling.

[6] The parties did not raise the issue that two of the medical sources whose opinions are at issue here, are not physicians.  Because different standards apply to the Court's review of the ALJ's decision to discount the opinions of a non-physician, the Court notes this important distinction.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

[7] Under the referenced standard, the Court applies the heightened standard for discounting physicians to Drs. Levy, H. Chan, F. Chan, and Dr. Ashling together with Ms. Visci. *See Taylor v. Comm'r of Social Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (finding that the opinion of a nurse practitioner should be treated as that of a physician where the nurse practitioner and physician had a sufficiently close relationship in treating the claimant).

United States District Court
Northern District of California

discussion of Dr. Levy and his reasons for discounting Dr. Levy's opinion were conclusory rather than clear and convincing.  Specifically, the ALJ simply stated that he found "the record shows that while the claimant continues to suffer from some degree of depression, her symptoms are not as limiting alleged.  Since the alleged onset date, her symptoms have improved and her mental state has been generally stable." (*Id.* at 23.)  These are not the types of clear and convincing reasons necessary to reject Dr. Levy's opinion.

Dr. Levy's treatment notes spanning from February 2010 to January 2011 provide evidence that could support the ALJ's determination that plaintiff's mental health has improved. When Dr. Levy saw plaintiff on February 19, 2010, he noted her mental state was normal, but she was tearful, liable, agitated, and not sleeping well.  (*Id.* at 304.)  She was not on psychotropic drugs at the time.  (*Id.*)  His narrative noted that "she has been reasonably stable on drug regimen following her kidney transplant but is concerned that she has been having a glass of wine every night and smoking speed once a month and is fearful of falling back into her old habits. She has also been liable and irritable with mixed moods and weight gain is an issue as is a craving for alcohol."  (*Id.*)  At plaintiff's March 10, 2010 visit to Dr. Levy he noted that plaintiff was "quite agitated," placed her on a new drug regimen, and scheduled a follow up visit.  (*Id.* at 314.)  His narrative reads: "[plaintiff] is seen with a friend and her therapist after feeling she couldn't do cdpr and coming here unscheduled on an urgent basis.  She is only on Neurontin and is tearful and agitated and can't sleep.  She states she has 18 days off speed and pot.  She is asking for meds and retroactive disability."  (*Id.*).  At a subsequent visit to Dr. Levy, on September 21, 2010, Dr. Levy notes plaintiff has been "quite depressed and anxious as she struggles to stay off speed.  She has completed cdrp and a 30 day treatment program and hopes to get into a longer term program in the city.  Though Neurontin and Seroquel help some with clinical anxiety and sleep she is still quite depressed.  She is coping well since she has had her kidney transplant." (*Id.* at 317.)

By January 4, 2011, Dr. Levy's notes seem to indicate that plaintiff is feeling better.  (*See id.* at 320.)  He notes that her mental status is normal with only intermittent mood liability.  (*Id.*) His narrative summary of the visit states that plaintiff is "in the inpatient residential program at Harbor Lights in San Francisco and their questionnaire is filled out.  At this time she is off

1    inhalants and speed and her mood is reasonably stable on seroquel, celexa and neurontin.

2    Disability is extended until 4/1 as long as she stays at Harbor Lights." (*Id.*) Dr. Levy also

3    assigned plaintiff a GAF score of 51-60, reflecting his diagnosis that her symptoms were

4    'moderate.' (*See e.g. id.* at 305.)

5            Thus, Dr. Levy's treatment notes provide some support for the ALJ's stated reasons for

6    giving little weight to Dr. Levy's opinion on the limiting effects of plaintiff's symptoms.  By

7    contrast, the ALJ's conclusion suffers from a lack of the necessary analysis and interpretation of

8    the record.  The ALJ does not specifically relate any of the information summarized above to his

9    ultimate finding to reject Dr. Levy's opinion.  Although one could speculate as to the import of the

10   information recounted above, this Court cannot affirm the ALJ on a ground upon which he did not

11   rely.  *See Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

12   While the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences

13   from the ALJ's opinion," it may do so only "if those inferences are there to be drawn." *Magallanes*

14   *v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  Here, the ALJ simply failed to explain in sufficient

15   detail the specific conflicts he saw in the record and how those conflicts led him to his ultimate

16   decision on the amount of weight to give to Dr. Levy's opinion.  In other words, while the ALJ set

17   "out a detailed and thorough summary of the facts," he failed to state the conflicting clinical

18   evidence specifically, and his interpretation of it; nor did he explicitly state the findings he made

19   that led him to his ultimate conclusion on the weight to accord Dr. Levy's opinion.  *See Embrey*,

20   849 F. 2d at 421.  As such, the Court finds that the ALJ did not provide the requisite clear and

21   convincing reasons for giving only little weight to the opinion of treating physician Dr. Levy.

22           With respect to Mr. Schwager, however, a different standard applies.  The ALJ gave Mr.

23   Schwager's opinion that plaintiff would miss more than 5 days of work a month little weight for

24   the exact same reasons he discounted Dr. Levy's opinion, or because (1) the disabling effects of

25   plaintiff's depressive symptoms were not as severe as alleged, and (2) her symptoms improved

26   over time – in contradiction to their opinions.  The ALJ's decision contains only a single sentence

27   in which he discounted Dr. Levy's and Mr. Schwager's opinions, providing these same two

28   reasons for discounting both opinions.  While these reasons were not clear and convincing as

United States District Court
Northern District of California

18

United States District Court
Northern District of California

required for discounting the opinion of a treating physician, the Court finds they are germane to Mr. Schwager. *Ghanim*, 763 F.3d at 1161.

Like Dr. Levy, Mr. Schwager's treatment notes from September 2011 provide evidence germane to the ALJ's stated reasons for discounting their opinions. These records track the narrative of gradual improvement in plaintiff's condition highlighted by the ALJ in his written explanation of his decision. (*See id.* at 22-24.) Earlier notes from meetings in June and July of 2011 indicate that plaintiff's mood and general mental state were worse when she first entered treatment. (*See e.g. id.* at 472, 471.) Mr. Schwager's treatment notes for September 1, 2011, on the other hand, note that plaintiff is stable on medication and her mood is generally stable. (*Id.* at 467.) Mr. Schwager's treatment notes from September 29, 2011 note that plaintiff is less depressed on her current meds, and that her mental status is generally good. (*Id.* at 464.) His summary of their visit reads: "[plaintiff] is stable at present. She is dealing effectively with issues related to: abstinence from drugs/alcohol and issues related to recovery. She is attending outside support meetings. The patient's bipolar disorder appears to be stable. She is compliant with medication and treatment plan." (*Id.*) And among other things, the narrative summary of that same visit includes the notation: "An attorney took her SSDI case. This will be based on [history] of chronic depression, even though her mood is better lately." (*Id.*)

The ALJ's reasons for discounting Mr. Schwager's testimony were germane and substantiated by the record. Specifically, the record as a whole supports the ALJ's conclusion that Mr. Schwager's opinion was contradicted by his treatment notes showing that plaintiff's depressive symptoms were not as severe as he opined and that her symptoms had improved over time. *See Ghanim*, 763 F.3d at 1161 ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") (citing *Molina*, 674 F.3d at 1111–12). Consequently, the Court will not disturb the ALJ's determination with respect to the appropriate weight to afford Mr. Schwager.

**3.    Dr. Helena Chan, Dr. Flora Chan, Dr. Ashling, and Nurse Practitioner Visci**

The ALJ's decision should also be remanded because he improperly gave only limited weight to the opinions of four treating medical sources. The ALJ gave the opinions of these

physicians (and one cosigning nurse practitioner) limited weight for four reasons.  First, the ALJ stated that these treating source opinions were inconsistent with the physicians' corresponding treatment notes.  He also determined they were inconsistent with plaintiff's GAF scores, seemed to rely heavily on plaintiff's subjective reporting without corroborating signs on exam, and were inconsistent with the treatment record as a whole.  (*Id.* at 23.)  Similar to Dr. Levy and Mr. Schwager, the treatment notes of these medical sources suggest that plaintiff was quite depressed at the outset of treatment, but has shown steady improvement over time.  (*See, e.g. id.* at 511-19.)  Here, again, the Court finds that the ALJ failed to provide the requisite clear and convincing reasons for rejecting the uncontroverted opinions of these treating physicians.

The ALJ summarized the observations and opinions of these three treating physicians and nurse practitioner in a single paragraph, and only provided two conclusory sentences listing his reasons for giving limited weight to their opinions.  (*See id.* at 23.)  To provide the requisite clear and convincing reasons, more is required.  The ALJ's dismissal of these opinions, like his conclusory dismissal of Dr. Levy's opinion, lacks analytical support or interpretation.  The ALJ's explanation is devoid of support. "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings….The ALJ failed to do so here." *Embrey*, 849 F. 2d at 422 (internal citation omitted).

* * *

For the foregoing reasons, the Court concludes that the ALJ has failed to "do more than offer [his] conclusions" for discounting the opinions of plaintiff's treating physicians. *See Embrey*, 849 F.2d at 421.  Plaintiff's motion is therefore **GRANTED** with respect to the opinions of Dr. Levy, Dr. Helena Chan, Dr. Flora Chan, Dr. Ashling, and Ms. Visci. On remand, the ALJ must provide specific, clear, and convincing reasons for discounting the uncontroverted opinions of plaintiff's treating physicians (and co-signer Nurse Practitioner Visci.), which he did not do in the decision currently before the Court.

With respect to Mr. Schwager, the Court finds the ALJ provided reasons germane for discounting his opinion and that the reasons were supported by substantial evidence.  The

1    Commissioner's motion is **GRANTED** on this ground.

2         **C.    State Agency Reviewer Dr. Beverley Morgan**

3         Plaintiff argues that the ALJ should not have accorded the most probative weight to the

4    opinion of state agency reviewer Dr. Beverley Morgan, that plaintiff could perform simple,

5    repetitive tasks. (*Id.* at 23 (citing Ex. 3A, a disability determination explanation completed, in

6    relevant part, by Dr. Morgan (*id.* at 77-90)).) The ALJ accorded Dr. Morgan's assessment the

7    most probative weight because he found it was "consistent with the treatment record, the

8    claimant's breadth of activity, and her presentation at the hearing." (*Id.*) Plaintiff argues this

9    explanation is not a legally sufficient reason for rejecting the unanimous opinions of plaintiff's

10   treating medical sources in favor of Dr. Morgan's opinion. For the reasons discussed above, the

11   Court agrees with plaintiff that the ALJ did not provide sufficiently clear and convincing reasons

12   for discounting the opinions of plaintiff's treating physicians. However, this does not necessarily

13   lead to the conclusion that the ALJ erred in giving great weight to the opinion of Dr. Morgan.

14        In the hierarchy of medical opinions, Dr. Morgan is a non-examining physician, whose

15   opinions are generally accorded the least probative weight. *See Lester v. Chater*, 81 F.3d 821,

16   830-831 (9th Cir. 1995) ("The opinion of a nonexamining physician cannot by itself constitute

17   substantial evidence that justifies the rejection of the opinion of either an examining physician or a

18   treating physician"). The ALJ's decision to discount the opinions of plaintiff's treating physicians

19   was not entirely based on Dr. Morgan's assessment. The ALJ summarily provided other reasons,

20   and the Court has already determined that those other reasons were not clear and convincing. On

21   remand, the ALJ must provide clear and convincing reasons if he again chooses to discount the

22   uncontroverted opinions of plaintiff's treating physicians in favor of Dr. Morgan's opinion. But

23   the ALJ may also consider Dr. Morgan's opinion in reaching his ultimate determination of

24   whether plaintiff is disabled. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th

25   Cir. 1999) ("But we have consistently upheld the Commissioner's rejection of the opinion of a

26   treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining

27   medical advisor.") (emphasis in original). There not being a sufficient basis to believe the ALJ

28   assessed solely on the relative weight given to plaintiff's treating physicians, the Commissioner's

United States District Court
Northern District of California

21

1   motion on this ground is **GRANTED**.

2       **D.    Lay Witness Testimony**

3       Plaintiff next contends that the ALJ committed harmful error in failing to address a letter

4   written by plaintiff's mother.  The Court disagrees.

5       Lay testimony is valid opinion testimony, which the ALJ must consider.  *Nguyen v.*

6   *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ's failure to discuss lay opinion testimony

7   constitutes harmless error when the ALJ explains his reasons for discounting other lay opinion

8   testimony, and the lay opinion testimony he does not discuss is substantially similar to the

9   testimony he provided specific reasons for discounting.  *See Molina v. Astrue*, 674 F. 3d 1104,

10  1122 (9th Cir. 2012); *see also Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ

11  provided clear and convincing reasons for rejecting [plaintiff's] subjective complaints, and

12  because [the lay witness'] testimony was similar to such complaints, it follows that the ALJ also

13  gave germane reasons for rejecting her testimony").

14      Although the ALJ did not explicitly discuss the letter from plaintiff's mother in his

15  decision, he did provide reasons why he did not find plaintiff's own subjective testimony entirely

16  convincing.  (*Id.* at 20-24.)  The ALJ also specifically addressed the lay opinion testimony of

17  plaintiff's friend Ms. Torres, which came in the form of a function report.  (*Id.* at 23-24.)  The

18  letter from plaintiff's mother explains afflictions that are substantially similar to the afflictions

19  described in plaintiff's testimony and Ms. Torres' function report.  The letter explains that while

20  plaintiff was historically "an exceptionally bright, articulate self-starter…there's a sluggishness

21  and sadness that seems to permeate every area of her life these days." (*Id.* at 210.)  The letter

22  continues with her mother's observations that days exist where plaintiff cannot get out of bed all

23  day, plaintiff has many fewer friends than before, plaintiff increasingly struggles to maintain her

24  concentration, plaintiff has trouble honoring time commitments, and plaintiff is consistently

25  fatigued.  (*Id.*)  Reduced to its essence, the letter paints a picture of a depressed person, but it does

26  not introduce any *new* information that is not captured by the combination of Ms. Torres' function

27  report and plaintiff's own testimony.  (*See, e.g. id.* at 50 ("I feel very discouraged and sometimes

28  just getting out of bed is very difficult for me."); *id.* at 56 ("I lose my train of thought easily…");

United States District Court
Northern District of California

1    *id.* at 170 (stating that plaintiff "[d]oes not have to [sic] much of social life anymore only

2    relationship with residents that she live with.").)  Thus, the ALJ's failure to discuss the letter from

3    plaintiff's mother specifically was harmless.  *See Valentine*, 574 F.3d at 694.  The

4    Commissioner's motion is **GRANTED** on this ground.

5              **E.    Vocational Expert Testimony**

6              Finally, plaintiff argues the ALJ committed reversible error by relying on a hypothetical

7    propounded upon the vocational expert that did not accurately reflect her actual limitations.  The

8    substance of plaintiff's argument stems from her contention that the ALJ's RFC determination was

9    flawed because the ALJ did not properly consider plaintiff's stated limitations and the opinions of

10   her treating physicians.  *See Stubbs-Danielson*, 539 F.3d at 1175-76 ("In arguing the ALJ's

11   hypothetical was incomplete, [the claimant] simply restates her argument that the ALJ's RFC

12   finding did not account for all her limitations because the ALJ improperly discounted her

13   testimony and the testimony of medical experts.").  As set forth above, the Court finds the ALJ

14   erred in discounting the opinions of her treating physicians.  On remand, the ALJ must revisit the

15   degree to which the opinions of plaintiff's treating physicians should be credited, which partially

16   formed the basis for his ultimate determination of her RFC.  Upon further proceedings in this case

17   on remand and consideration of the record evidence, the RFC may change.  Accordingly, the

18   Court need not address the propriety of specific questions posed to the vocational expert based on

19   the ALJ's flawed RFC.

20             **F.    Remand for Benefits**

21             Plaintiff urges the Court to exercise its discretion to remand for an award of benefits.  The

22   Ninth Circuit applies "a three-part credit-as-true standard, each part of which must be satisfied in

23   order for a court to remand to an ALJ with instructions to calculate and award benefits."

24   *Garrison*, 759 F.3d at 1020.  The standard is met where "(1) the record has been fully developed

25   and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to

26   provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

27   opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be

28   required to find the claimant disabled on remand."  *Id.* (footnote and citations omitted).

United States District Court
Northern District of California

1    Based on the record before it, the Court cannot conclude that a finding of disability is

2    inevitable on remand.  Rather, the Court finds that a remand for the ALJ to suitably address the

3    credibility of plaintiff's treating physician opinions is proper.  As the Ninth Circuit stated in

4    *Treichler v. Commissioner of Social Security Administration*, when "evaluating this issue, we

5    consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all

6    factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under

7    the applicable legal rules."  775 F.3d 1090, 1103–04 (9th Cir. 2014) (citation omitted).  It is "the

8    'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand

9    rule."  *Id*. at 1101.

10    The ALJ's legal error in "fail[ing] to provide sufficiently specific reasons for rejection the

11    testimony of [the treating physicians] does not, without more, require the court to credit [their]

12    testimony as true."  *Id*. at 1106.  Here, there remain conflicts between the opinions of the treating

13    physicians and their own records of plaintiff's treatment, which the ALJ must adequately resolve

14    on remand.  The state of this record also "raises crucial questions as to the extent of [plaintiff's]

15    impairment given inconsistencies between [her] testimony and the medical evidence in the record.

16    These are exactly the sort of issues that should be remanded to the agency for further

17    proceedings."  *Id*. at 1105 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995)).

18    While the Court recognizes that this case presents a rare instance of an ALJ insufficiently

19    discounting five uncontroverted treating source opinions, without more, an award of benefits as a

20    matter of law upon remand is not yet warranted.

21    **V.    CONCLUSION**

22    For the reasons stated above, plaintiff's motion for summary judgment is **GRANTED IN**

23    **PART** and the Commissioner's cross motion for summary judgment is **GRANTED IN PART**.  This

24    action is hereby **REMANDED** to the ALJ for further proceedings consistent with this Order.

25    Judgment will be entered accordingly.

26    **IT IS SO ORDERED.**

27    Dated: November 2, 2015

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

28

*United States District Court*
*Northern District of California*

24